### ERNST *v.* FREEMAN'S ESTATE.

1. ESTATES OF DECEDENTS—DISTRIBUTION—COLLATERAL HEIRS.

    Under 3 Comp. Laws, § 9322, providing that the personal property of a decedent, undisposed of by will, shall, in the absence of parents and issue, after specified deductions and allowances, be distributed, "one-half to the widow, and the other half to the  *  *  *  brothers and sisters, and the issue of any deceased brother or sister, in equal proportions, share and share alike," the issue of a deceased brother or sister take *per stirpes*, and not *per capita*.

2. SAME—PROTECTION OF ADMINISTRATOR—APPEAL.

    Where distribution of an estate has been ordered by the probate court, and no stay has been granted or appeal taken, and the administrator proceeds under such order in good faith, he will be protected therein, though the time for appeal has not expired.

Error to Branch; Yaple, J.  Submitted December 10, 1901.  Decided January 7, 1902.

In the matter of the estate of Cornelius Freeman, deceased.  Harriet Ernst, a distributee, appealed from an order of distribution by the probate court.  From a judgment allowing the administrator's account after distribution, said Ernst brings error.  Affirmed.

*John A. Loranger*, for appellant.

*Reynolds & Reynolds* (*H. H. Barlow*, of counsel), for appellee.

HOOKER, C. J. Cornelius Freeman died intestate in 1897, leaving no parents and no issue. The persons entitled to share his estate were: His widow, Henrietta Freeman; two sisters, Jane Bundy and Harriet Ernst; two children of his deceased sister Hannah; two children of his sister Nancy; two children of his brother John; three children of his sister Sally; three children of his sister Betsy; two grandchildren of his sister Hannah; two grandchildren of his brother John. The intestate died seised of both real and personal property, the former having been divided satisfactorily to the parties. The estate was administered, and on May 21, 1898, after due notice, an order of distribution was made. No complaint is made regarding the share awarded to the widow. The remainder was directed to be distributed *per capita* among the sisters and the children and grandchildren of other brothers and sisters. Immediately after the order was made, and on the same day, the administrator, in good faith, proceeded to pay the distributees the several amounts due them according to the terms of the order. On the day of the hearing, $85 was paid on the share of the plaintiff, Harriet Ernst, intestate's sister, upon her written order. Some of the distributees were nonresidents, and the shares of such were deposited in bank, and receipts forwarded, with notice that, upon return of the receipts properly signed, the respective amounts would be forwarded.

On or before July 16, 1898, the administrator paid all of the distributees except Harriet Ernst, who did not send her receipt. On that day he filed the receipts. Up to that time he had no notice that any person intended to appeal. On July 18, 1898, Harriet Ernst appealed to the circuit court, claiming that the order should have provided for a distribution *per stirpes*, and not *per capita*, which would give her a much larger share of the estate than she was given by the order. There was in the hands of the administrator on April 26, 1900, only $251.91, which was made up of a balance due Harriet Ernst under

the order, and interest which had accumulated thereon. The learned circuit judge found that Harriet Ernst was right in her contention, and that the distribution should have been *per stirpes,* and not *per capita,* but that, having in good faith made payment under the order of the probate court, he was protected by it, and allowed the account of the administrator as presented.   Harriet Ernst has again appealed.

There are two clearly cut questions before us:

1. Was the order of the probate judge correct?   If so, there is no occasion to consider the other.

2. If wrong, was the administrator legally bound to anticipate an appeal, and withhold distribution during the statutory period within which the parties might appeal?

The first question is decided in the case of *Hascall* v. *Cox,* 49 Mich. 439 (13 N. W. 807).   3 Comp. Laws, § 9322, provides that, in the absence of parents and issue, the personal property shall be distributed as follows:

''One-half to the widow, and the other half to the  *  *  * brothers and sisters, and the issue of any deceased brother or sister, in equal proportions, share and share alike.''

The issue of a deceased brother, whether one or many, would take by representation an equal share with a living brother or sister.   It follows that the order of the probate court was erroneous.

The proceeding was *in rem,* and there is much reason for requiring an administrator to defer payment under an order of distribution until aggrieved parties have an opportunity to appeal, especially where, as is claimed in this case, the distributee is impecunious, and cannot be compelled to return the excess that has been received. But we are aware of no rule which precludes the administrator from complying with the valid order of the probate court, where it is done in good faith.   All appeals are statutory, and, until appealed from, judgments may be enforced. Even an appeal does not always operate as a *supersedeas,* though it does, in cases like this, by statute.

There is nothing in the statute, however, that indicates that performance of such an order shall be deferred until after the prescribed period shall have expired without an appeal being taken. The case is upon the same footing as those arising upon other orders. There is no provision limiting their operation while the right to appeal exists, and such a rule would be not only unnecessary in many of these instances, but burdensome as well, for it would tend to delay the settlement of estates unnecessarily. Such a provision in relation to orders of distribution appears not to have been found necessary until the present case. We cannot question the good faith of the payment upon this record, but it is unfortunate that the administrator should have complied with the order until he ascertained whether the same was satisfactory to the parties interested. Unless we are to make the judgments of probate courts exceptional, we cannot sustain appellant's contention. Judgments of justices of the peace are suspended to give an opportunity for appeal, but this is by statute; while in all other cases it is at least necessary to take an appeal, or get an order staying proceedings, to preclude the payment or enforcement of a final judgment. Cases arising upon probate orders are not wanting, as appears from the briefs of counsel. Freem. Judgm. §§ 482, 104b; 1 Black, Judgm. §§ 170, 355; *Fraser's Ex'r* v. *Page*, 82 Ky. 73; Chat. Prob. Law, §§ 2211, 1524, 1525; *Young* v. *Thrasher*, 48 Mo. App. 327; *Loring* v. *Steineman*, 1 Metc. (Mass.) 204; Woerner, Adm'n, §§ 543, 548, 561; *Palmer* v. *Whitney*, 166 Mass. 306 (44 N. E. 229); *Vandergrift's Adm'r* v. *Cone*, (Ky.) 37 S. W. 60; *In re Wolfe's Estate*, 15 N. Y. Supp. 539; *Lamson* v. *Knowles*, 170 Mass. 295 (49 N. E. 440); *Cathaway* v. *Bowles*, 136 Mass. 54; *Pierce* v. *Prescott*, 128 Mass. 140; *Kelly* v. *West*, 80 N. Y. 139; *In re Pritchett's Estate*, 51 Cal. 568; *Merrick* v. *Kennedy*, 46 Neb. 264 (64 N. W. 989); 3 Comp. Laws, § 10300; *People* v. *Clerk of Bay Circuit Court*, 14 Mich. 169.

We are constrained to affirm the order of the circuit court.

MOORE, GRANT, and MONTGOMERY, JJ., concurred. LONG, J., did not sit.