# Richmond

## Priscilla Mott v. National Bank of Commerce; Etc.

May 1, 1950.

Record No. 3627.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan and Miller, JJ.

The opinion states the case.

*Martin & Richardson*, for the appellant.

*Willcox, Cooke & Willcox* and *Michael B. Wagenheim*, for the appellees.

BUCHANAN, J., delivered the opinion of the court.

The question for decision on this appeal is whether an adopted child takes under a will devising property to the heirs at law of her foster brother.

Alfred von Nyvenheim, of the city of Norfolk, died on the 9th day of June, 1924, leaving a will which was dated March 26, 1914, and which was duly probated. By it he directed that his property be sold and, after some specific bequests, he gave to his wife the income from the balance during her life. Then followed this clause, which is the subject of this controversy:

"Sixth. At the death of my wife I desire that my estate, not hereinbefore disposed of, be divided equally between the brother of my wife, Charles W. Newcomb, the son of my wife's sister, Charles T. Snow, and the children of my brother, Alphonse von Nyvenheim. If the said Charles W. Newcomb shall depart this life prior to the death of my said wife, I give the share of my estate hereinbefore devised to him, to his son, Emery G. Newcomb. If the said Emery G. Newcomb, Charles T. Snow, or any child of my said brother shall die prior to the death of my wife, I give the share of my estate hereinbefore devised to him, or her, to his, or her, heirs at law, it being my intention that my said

estate shall be so divided as that the persons hereinbefore named, to-wit: Charles W. Newcomb, or if he shall die prior to the death of my wife his said son, Emery G. Newcomb, Charles T. Snow, and each child of my said brother, shall have equal portions of my said estate, the heirs at law of each of the aforesaid taking, in the event of his, or her, death, the share hereinbefore given to him, or her."

The wife died September 21, 1947. Prior to her death both Charles W. Newcomb and Emery G. Newcomb, his son, had died, the former dying first. The record does not show the specific dates of their deaths. Emery G. Newcomb was never married and had no children. His father and mother both died before him and he had no brothers or sisters and there were no descendants of any brother or sister.

Priscilla Mott, the appellant, was his sister by adoption. She was legally adopted by Charles W. Newcomb and his wife, parents of Emery G. Newcomb, in 1912 in New Hampshire, where they were then residing.

This suit was brought by the bank as Administrator c. t. a. of the testator, stating that it had become its duty to disburse one-seventh of the residuary estate, amounting to approximately $4,000, to the heirs at law of Emery G. Newcomb and asking the court to determine who they were.

Priscilla Mott answered, asserting that by virtue of her adoption she became the lawful daughter of Charles W. Newcomb and his wife, and thereby the only sister of Emery G. Newcomb, their son, and hence entitled to the whole of said fund as the only heir at law of Emery G. Newcomb.

Charles T. Snow, the first cousin of Emery G. Newcomb, answered the bill denying that Priscilla Mott was an heir at law and asserting that he was Emery G. Newcomb's only heir at law and therefore entitled to the said fund.

No evidence was taken and it was stipulated that these pleadings, the will, the opinion of the court and the final decree constitute the record. The trial court held that

Priscilla Mott was not an heir of Emery G. Newcomb and from its decree so deciding this appeal was allowed.

It will be observed that the share of the estate here in controversy was given first to Charles W. Newcomb but if he should die before the wife, then to Emery G. Newcomb, and if he should die before the wife, then to Emery G. Newcomb's heirs at law. The devises to Charles W. Newcomb and to Emery G. Newcomb were both estates on condition, both liable to be defeated by the happening of a condition subsequent; that is, their death before the death of the wife, the life tenant. The condition happened and, therefore, their estates terminated and never took effect in possession. The estate to the heirs at law of Emery G. Newcomb was a contingent remainder at its creation, in the nature of a contingency with a double aspect. Graves, Notes on Real Property, sec. 183, p. 211. But a remainder contingent in its creation may, by after event, become vested prior to the time of its taking effect in possession. *Idem*, sec. 174, p. 201. So, when the prior conditional estates of Charles W. Newcomb and Emery G. Newcomb were terminated by their death prior to the death of the life tenant, the devise to the heirs at law of Emery G. Newcomb became, upon his death, a vested remainder in fee in his heirs at law.

His heirs at law became certain at the date of his death. *Dickenson* v. *Buck*, 169 Va. 39, 43, 192 S. E. 748, 750. They could not be determined prior to that time. *Nemo est haeres viventis*. The will was that if he died before the widow, "I give the share of my estate hereinbefore devised to him * * to his * * heirs at law." This share thus became an estate in remainder after the life estate of the widow and vested in the heirs at law of Emery G. Newcomb immediately upon his death. Thereafter the remainder was ready to come into the possession of definitely ascertained persons at any time the life tenant should die.

"A remainder is vested when it is subject to no condition precedent, and is always ready, during its continuance,

to come into the possession of a certain person, already existing and ascertained, on the determination of the particular estate, now or hereafter, in any manner whatsoever. And any remainder not so ready is contingent." Graves, Notes on Real Property, sec. 174, p. 201. *Disney* v. *Wilson, ante,* pp. 445, 455-6, 57 S. E. (2d) 144, 149.

The answer to the inquiry as to who were the heirs at law of Emery G. Newcomb, in whom the remainder vested, is to be found in the statutes of descents and distributions as supplemented by the adoption laws in force at the time of his death. *Blodgett* v. *Stowell,* 189 Mass. 142, 75 N. E. 138; *Brooks Bank, etc., Co.* v. *Rorabacher,* 118 Conn. 202, 171 A. 655; 2 C. J. S., Adoption of Children, sec. 63 b, p. 453. It is conceded here, and is the general rule, that the adoption law of Virginia, where the testator resided and owned property, controls. *Anderson* v. *French,* 77 N. H. 509, 93 A. 1042, L. R. A. 1916A, p. 660, and note at p. 666; Anno. 73 A. L. R. 964; *In re Youman's Estate,* 218 Minn. 172, 15 N. W. (2d) 537, 154 A. L. R. 1171 and anno. at p. 1179.

As stated, the exact date of the death of Emery G. Newcomb is not shown. It occurred after the death of the testator in 1924 and before the death of the life tenant in 1947. However, it seems to be conceded in the argument that his death occurred before the 1942 amendment of our adoption laws providing that a legally adopted child shall inherit, according to the statutes of descents and distributions, "from and through both the natural parents and the parents by adoption." Acts, 1942, ch. 205, p. 255; Code, 1950, secs. 63-347 *et seq.*

The adoption statutes in effect when the will was made in 1914, when the testator died in 1924, and at all times before the effective date of the 1942 act, provided as follows:

"Such (adopted) child shall be, to all intents and purposes, the child and heir at law of the person so adopting him or her, entitled to all the rights and privileges and subject to all the obligations of a child of such person begotten in

lawful wedlock; but on the decease of such person and the subsequent decease of such adopted child without issue the property of such adopted parent still undisposed of shall descend to his or her next of kin and not to the next of kin of such adopted child." Acts, 1910, ch. 306, p. 466, at p. 467. Acts, 1920, ch. 343, p. 514; Acts, 1922, ch. 484, p. 839; Acts, 1936, ch. 337, p. 542.

In *Munday* v. *Munday*, 164 Va. 145, 178 S. E. 917, 98 A. L. R. 187 applying this statute, we held that a child previously adopted by the wife was not surviving issue of the marriage so as to limit the husband who had renounced the wife's will to one-third of her personal estate under the provisions of Code, section 5276 as amended (1942 (Michie) ).

In *Dickenson* v. *Buck, supra,* decided in 1937, and hence prior to the 1942 amendment to the adoption law, a will devised land to a son for life and after his death to his "legal heirs." It was held that an adopted son of the life tenant was his legal heir by virtue of the adoption statute quoted above. In that case it was pointed out that the facts and issues in the *Munday Case* were different, and that the statement in the latter case that the adopted child does not inherit from the ancestor of the adopting parent nor from its foster brothers and sisters was not necessary to the determination of the specific question involved in that case.

*Fletcher* v. *Flanary*, 185 Va. 409, 38 S. E. (2d) 433, 166 A. L. R. 145, was decided in 1946 after the 1942 amendment to the adoption law. The language of the deed there involved was construed as not intending to include an adopted son as "issue" of the life tenant. In the opinion, after stating that adopted children take from their foster parents, who die intestate, what children born in wedlock would take, it is stated, "but they take nothing as heirs or distributees from remote ancestors." (185 Va. at p. 409, 38 S. E. (2d) at p. 435). The latter statement was not necessary to the decision of the case, which turned on the construction of the deed, and we do not adopt it as a construc-

tion of the 1942 amendment to the adoption law. That amendment is not involved in the case in judgment and we express no opinion as to its effect upon inheritance by adopted children from remote or collateral kindred.

In *Dickenson v. Buck, supra,* dealing with the above quoted adoption law, which was then in effect and which controls the decision here, we said:

"The weight of authority seems to be that an adopted child inherits from his foster parents but not through them. The foster parent takes the adopted child as one of his prospective next of kin but the foster parent cannot place the adopted child for inheritance purposes upon his relations." 169 Va. at p. 48, 192 S. E. at p. 752.

As pointed out in the *Dickenson Case,* the cases holding to the contrary are in the main based on statutes different from ours before its amendment. In any event, such cases are distinctly in the minority.

In *In re Bradley's Estate,* 185 Wis. 393, 201 N. W. 973, 38 A. L. R. 1, it was held, under a statute very similar to ours before the 1942 amendment, that an adopted son did not inherit from the adopting father's brother, the opinion stating that "it has never been held by this court, nor is it the prevailing judicial view of the courts of this country, that an adoption statute should be liberally construed to divert the descent of property left by those who are not parties to the adoption proceedings from its natural course of descent." (38 A. L. R. at p. 4). And it was further said that text writers generally lay down the rule, and many cases have held, "that under statutes of adoption which declare the adopted child to have all the rights, including that of inheritance, of a child born in lawful wedlock, the adopted child is not constituted an heir of the collateral kindred of the adoptive parents." (38 A. L. R. at p. 5).

In an annotation to that case in 38 A. L. R. at page 8 cases are collected in support of the statement that "it is the general view that an adoption statute will not be construed to make an adopted child an heir of relatives of the

adoptive parent, unless there is language in the statute clearly to that effect."

In *Allen* v. *Nickerson*, 293 Mass. 136, 199 N. E. 482, it is said that "it is held with great unanimity that in the absence of some indication to the contrary in the statute it is not deemed to have been the legislative intent to create a status which confers upon the person adopted a right to inherit collaterally from blood kindred of the adopting parent." 199 N. E. at pp. 483-4. Many cases supporting the statement are cited.

See also, *Grimes* v. *Grimes*, 207 N. C. 778, 178 S. E. 573; *Brooks Bank, etc., Co.* v. *Rorabacher*, 118 Conn. 202, 171 A. 655; *Shoemaker* v. *Newman*, 65 F. (2d) 208, 89 A. L. R. 1034; *Wilder* v. *Butler*, 116 Me. 389, 102 A. 110, L. R. A. 1918B, 119 and Anno. at p. 123; Annotations, 70 A. L. R. 621, 120 A. L. R. 837; 1 Am. Jur., Adoption of Children, sec. 63, p. 662; 2 C. J. S., Adoption of Children, sec. 63 d, p. 455.

In the following cases courts which had previously held, as we held in *Dickenson* v. *Buck, supra*, that a devise or deed to a life tenant with remainder to his heirs carried the remainder to an adopted child of the life tenant, later decided under the same statutes that the adopted child does not inherit from collaterals: *Southern Ohio Sav. Bank, etc., Co.* v. *Boyer*, 66 Ohio App. 136, 31 N. E. (2d) 161; *In re Hodges' Will*, 294 N. Y. 58, 60 N. E. (2d) 540; *Moritz* v. *Callender*, 291 Mich. 190, 289 N. W. 126.

▮▮ We find in our adoption statute, as it was before the 1942 amendment, no purpose, certainly no clear purpose, to require that when a person adopts an heir for himself he thereby makes him an heir for all the relatives of the adopter. "By adoption, the adopters can make for themselves an heir, but they cannot thus make one for their kindred," *Warren* v. *Prescott*, 84 Me. 483, 24 A. 948, unless the adoption law clearly so provides.

It is to be remembered that we are here construing a will with the objective of ascertaining the intention of the testa-

tor. *Dickenson* v. *Buck, supra.* As it later turned out, this will gave a vested remainder to those who became heirs at law of Emery G. Newcomb when the latter died. To determine who then fell within that class it is necessary to resort to the statutes of descents and distributions, Code, 1950, sec. 64-1, sec. 64-11, as supplemented by the adoption law then in force, in order to give effect to the testator's intention. In holding, as we do, that Priscilla Mott was not an heir at law of Emery G. Newcomb, we are holding, we think, consistently with the intention of the testator so far as it can be ascertained from the will and from the additional facts given us. She was adopted by Charles W. Newcomb two years before the testator made his will, and twelve years before he died, yet she was not mentioned in the will. When the testator looked forward to the contingency of Charles W. Newcomb's death, he gave his share to Emery G. Newcomb only, not to him and his adopted sister, nor to her if he should die. There is a rather strong inference from the factual situation that the testator did not have in mind and did not intend that Charles W. Newcomb's adopted daughter would have a share of his estate under the provision for the heirs at law of Emery G. Newcomb.

The decree of the trial court must be affirmed. That decree left the cause on the docket for the purpose of determining who were the heirs at law of Emery G. Newcomb exclusive of Priscilla Mott. The motion made here by the attorney for the bank for the allowance of an attorney's fee is referred to the trial court.

*Affirmed.*